IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY WOLF,                              :
    **Plaintiff**                         :        **No. 1:24-cv-01797**
                                          :
    **v.**                                :        **(Judge Kane)**
                                          :
**OFFICER GUNTHER, et al.,**               :
    **Defendants**                        :

**MEMORANDUM**

Currently before the Court is Defendants' motion to dismiss pro se Plaintiff Anthony Wolf ("Wolf")'s complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court will (1) grant in part and deny in part the motion, (2) dismiss certain claims pursuant to the Court's screening authority under 28 U.S.C. § 1915(e)(2)(B), and (3) grant Wolf leave to file an amended complaint.

## I.      BACKGROUND

Wolf, a convicted prisoner currently incarcerated at Pennsylvania State Correctional Institution Frackville ("SCI Frackville"), commenced this action by filing a complaint, an application for leave to proceed in forma pauperis ("IFP Application"), and a certified copy of his prison trust fund account statement, all of which the Clerk of Court docketed on October 18, 2024. (Doc. Nos. 1–3.) In the complaint, Wolf names as Defendants five employees of the Bradford County Correctional Facility ("BCCF"): (1) Correctional Officer Mr. Gunther ("Gunther"); (2) Correctional Officer Travis Pond ("Pond"); (3) Sergeant Kipp ("Kipp"); (4) Deputy Shoemaker ("Shoemaker"); and (5) Warden John Doe #1 ("Warden Doe"). (Doc. Nos. 1 at 1–2; 1-1 at 1–3.)

Wolf alleges that he arrived at BCCF in December 2022. See (Doc. Nos. 1 ¶ 9; 1-1 at 2). Approximately a year later, in December 2023, Gunther escorted Wolf to a prison misconduct

hearing while Wolf was in handcuffs.  See (Doc. No. 1 ¶ 11).  Gunther claimed that Wolf attempted to slip out of his handcuffs, resulting in Gunther slamming Wolf to the ground and stepping on his back.  See (id. ¶ 12).  Even though Wolf "was not assaultive and/or aggressive in any manner," Gunther and other BCCF officers used excessive force by stomping on him.  See (id. ¶ 13).

After this physical altercation, Kipp directed Pond and Gunther to escort Wolf to a cell. See (id. ¶¶ 14–15).  Wolf alleges that he was confined "under inhumane conditions" because he did not have footwear, there was constant lighting, he did not have any "hygiene material," and "the cell was unsanitary and not cleaned in a long period of time."  See (id. ¶ 16).  Wolf remained in this cell for seven (7) days.  See (id. ¶ 19).  Wolf grieved about his cell conditions to Shoemaker and Warden Doe, which meant that "they had knowledge via the grievance system that the events occurred."  See (id. ¶ 20).  However, Shoemaker and Warden Doe "ignored [his] claims and denied all requested relief."  See (id.).

Based on these allegations, Wolf asserts claims under Section 1983 against Defendants. See (id. at 1; Doc. No. 1-1 at 1).  Wolf avers that Gunther's use of excessive force and the inhumane conditions of his confinement violate his right under the Eighth Amendment to be free from cruel and unusual punishment.  See (Doc. Nos. 1 at 3; 1-1 at 5).  For relief, he seeks a declaration that Defendants' acts and omissions violated his constitutional rights and punitive damages.  See (Doc. Nos. 1 at 3; 1-1 at 5).

After reviewing Wolf's IFP Application and screening his complaint pursuant to 28 U.S.C. §§ 1915 and 1915A, the Court issued an Order on November 26, 2024, which, inter alia, (1) granted the IFP Application, (2) dismissed Wolf's Section 1983 claims against Shoemaker and Warden Doe with prejudice, and (3) directed the Clerk of Court to send waiver of service

forms to Defendants. <u>See</u> (Doc. No. 6).  Defendants did not return waivers of service; as such, the Court issued an Order on January 15, 2025, directing the United States Marshals to serve summonses and copies of the complaint upon Gunther, Kipp, and Pond (collectively "Defendants").  (Doc. No. 9.)  The Marshals effected service on Defendants (Doc. Nos. 11–13), and Defendants filed a motion for an extension of time to file their response to Wolf's complaint on February 27, 2025.  (Doc. No. 17.)  The Court granted the motion (Doc. No. 18), and Defendants timely filed the instant Rule 12(b)(6) motion to dismiss on April 5, 2025.  (Doc. No. 19.)  Defendants also timely filed a brief in support of their motion on April 17, 2025.  (Doc. No. 20.)  To date, Wolf has not filed a response to the motion.

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(6) Motions to Dismiss

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  <u>See</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  <u>See</u> Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  <u>See</u> Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  <u>See</u> <u>In re Ins. Brokerage Antitrust Litig.</u>, 618 F.3d 300, 312 (3d Cir. 2010).  The Court's inquiry is guided by the standards of <u>Bell Atlantic</u>

3

Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Under

Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of

pleading."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent

dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is

facially plausible.  See id.  The plausibility standard requires more than a mere possibility that

the defendant is liable for the alleged misconduct.  As the Supreme Court instructed in Iqbal,

"where the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to

relief.'"  See Iqbal, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the Third

Circuit Court of Appeals has identified the following steps a district court must take under Rule

12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any

conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and

(3) determine whether any "well-pleaded factual allegations" contained in the complaint

"plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121,

130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 679).  When following these steps, "a court must

consider only the complaint, exhibits attached to the complaint, matters of public record, as well

as undisputedly authentic documents if the complainant's claims are based upon these

documents."  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit

Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

        In addition, in the specific context of pro se prisoner litigation, the Court must be mindful

that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97,

106 (1976); Higgs v. Att'y Gen., 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when

4

presented with a pro se litigant, we have a special obligation to construe [their] complaint liberally" (citation and internal quotation marks omitted)).  Therefore, a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106).  This means the Court must always "remain flexible, especially 'when dealing with imprisoned pro se litigants . . . .'"  See Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (quoting Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244–45 (3d Cir. 2013))).  Moreover, when construing a pro se complaint, the court will "apply the relevant legal principle even when the complaint has failed to name it."  See Mala, 704 F.3d at 244.  However, pro se litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'"  See Vogt, 8 F.4th at 185 (quoting Mala, 704 F.3d at 245).

**B.      Review Under 28 U.S.C. § 1915(e)(2)(B)**

Because the Court previously granted Wolf leave to proceed in forma pauperis in this case (Doc. No. 6), the Court retains the authority to screen his operative complaint and must "dismiss the case at any time if the [C]ourt determines that . . . the action . . . fails to state a claim upon which relief may be granted[] or . . . seeks relief against a defendant who is immune from such relief."  See 28 U.S.C. § 1915(e)(2)(B)(ii)–(iii) (emphasis added).  In reviewing Wolf's legal claims under Section 1915(e)(2)(B)(ii), the Court applies the aforementioned standard governing Rule 12(b)(6) motions to dismiss.  See, e.g., Smithson v. Koons, No. 15-cv-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under . . . § 1915(e)(2)(B)(ii) . . . is the same as that for dismissing a complaint pursuant to [Federal Rule of Civil Procedure]  12(b)(6)."), report and recommendation adopted, 2017 WL 3008559 (M.D. Pa. July 14, 2017).

**C.      Section 1983**

Section 1983 is the statutory vehicle by which private citizens may seek redress for

violations of federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.

This statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress . . . .

See id.  "Section 1983 is not a source of substantive rights," but is merely a means through which

"to vindicate violations of federal law committed by state actors."  See Pappas v. City of

Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S.

273, 284–85 (2002)).  "To state a claim under § 1983, a plaintiff must allege the violation of a

right secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law."  West v. Atkins, 487

U.S. 42, 48 (1988).

**III.     DISCUSSION**

**A.      Wolf's Failure to File a Response to the Rule 12(b)(6) Motion to Dismiss**

As noted above, Wolf did not file a response in opposition to Defendants' motion to

dismiss within the time set by the Court's Local Rules, i.e., by May 1, 2025.  See M.D. Pa. L.R.

7.6 ("Any party opposing any motion, other than a motion for summary judgment, shall file a

brief in opposition within fourteen (14) days after service of the movant's brief . . . .  Any party

who fails to comply with this rule shall be deemed not to oppose such motion."); see also M.D.

Pa. L.R. 83.18 ("Service of any notices, copies of pleadings, motions or papers in the action at

the address currently maintained on file in the clerk's office by a party shall be deemed to be

6

effective service upon such party."). Although Local Rule 7.6 supports this Court deeming Defendants' motion unopposed, the Third Circuit Court of Appeals disfavors district courts granting Rule 12(b)(6) motions based on the opposing party's failure to comply with a Local Rule. See Stackhouse v. Mazukiewicz, 951 F.2d 29, 30 (3d Cir. 1991) (concluding that under Anchorage Associates v. Virgin Islands Board of Tax Review, 922 F.2d 168 (3d Cir. 1990), the district court should not have dismissed a pro se prisoner-plaintiff's complaint "solely on the basis of" a local rule which allowed the district court to deem a motion as unopposed if the opposing party failed to file a brief "without any analysis of whether the complaint failed to state a claim upon which relief can be granted, as provided in [Rule 12(b)(6)]"); see also Gary v. Pa. Human Relations Comm'n, 497 F. App'x 223, 226 (3d Cir. 2012) (unpublished) ("[M]otions to dismiss should not be granted without an analysis of the merits of the underlying complaint, notwithstanding local rules regarding the granting of unopposed motions.").[1] The Third Circuit has explained that "if a motion to dismiss is granted solely because it has not been opposed, the case is simply not being dismissed because the complaint has failed to state a claim upon which relief may be granted. Rather, it is dismissed as a sanction for failure to comply with the local court rule." See Stackhouse, 951 F.2d at 30.

Despite disfavoring district courts granting Rule 12(b)(6) motions as unopposed, the Third Circuit has explained that there are certain cases in which a Rule 12(b)(6) motion may be granted as unopposed. See id. ("In reaching our result, we do not suggest that the district court

---

[1] Stackhouse involved an appeal from a dismissal entered in this District pursuant to then-Local Rule 401.6, which is now Local Rule 7.6. See 951 F.2d at 29 (explaining that Rule 12(b)(6) motion was granted as unopposed pursuant to Local Rule 401.6); Jaludi v. Citigroup, No. 15-cv-02076, 2016 WL 11788671, at *1 n.1 (M.D. Pa. Mar. 7, 2016) (noting that Local Rule 401.6 was renumbered Local Rule 7.6 via an amendment to the Local Rules on December 30, 1993).

may never rely on the local rule to treat a motion to dismiss as unopposed and subject to dismissal without a merits analysis. . . .  Thus, our holding is not broad.").  Such cases include those "where the failure of a party to oppose a motion will indicate that the motion is in fact not opposed, particularly if the party is represented by an attorney and in that situation the rule may be appropriately invoked," as well as "where a party fails to comply with the rule after a specific direction to comply from the court . . . ."  See id.

Here, the Court will not deem Defendants' motion to dismiss as unopposed because Wolf is proceeding pro se, and the Court has not issued an Order directing that he file a response to Defendants' Rule 12(b)(6) motion.  Therefore, the Court will consider Defendants' motion on the merits.

### B.      Wolf's Incarceration Status During the Events Alleged in His Complaint

It is unclear from the allegations in the complaint and the publicly available dockets for Wolf's criminal cases whether he was confined at the BCCF as a convicted and sentenced state prisoner or as a pretrial detainee when the events at issue in his complaint allegedly occurred in December 2023.  Wolf's incarceration status is significant in this case because it affects whether the Eighth Amendment, which applies to individuals already convicted and sentenced, or the Fourteenth Amendment, which applies to pretrial detainees, applies to his excessive-force and conditions-of-confinement claims.  See Hubbard v. Taylor, 399 F.3d 150, 164 (3d Cir. 2005) ("Hubbard I") (explaining that the Eighth Amendment applies to individuals who have been convicted and sentenced); Thomas v. Cumberland County, 749 F.3d 217, 223 n.4 (3d Cir. 2014) ("As a pretrial detainee, Thomas is not subject to the Eighth Amendment's protections; rather, the Fourteenth Amendment's Due Process Clause governs." (citing A.M. ex rel. J.M.K. v. Luzerne County Juv. Det. Ctr., 372 F.3d 572, 579 (3d Cir. 2004))); see also City of Revere v. Mass. Gen.

Hosp., 463 U.S. 239, 244 (1983) (explaining that the Eighth Amendment "has no application" until the government obtains a "formal adjudication of guilt," and that pretrial detainees' rights "are at least as great as the Eighth Amendment protections available to . . . convicted prisoner[s]").

As for Wolf's complaint, he filed it while he was incarcerated at SCI Frackville. See (Doc. No. 1-1 at 2). He also alleges that he is a convicted and sentenced state prisoner in his complaint. See (id.). However, Wolf's allegations relate to events that occurred at BCCF in December 2023, and he avers that he "arrived at [BCCF] in December 2022 for reasons unrelated to [the] complaint." See (Doc. No. 1 at 2). Based on these allegations, it is unclear from the complaint whether Wolf was already a convicted and sentenced state prisoner at the time of the events in the complaint or whether he was confined there as a pretrial detainee.

As for the publicly available dockets for Wolf's criminal cases, according to the Unified Judicial System of Pennsylvania Web Portal (https://ujsportal.pacourts.us/CaseSearch), a criminal information charging Wolf with simple assault (18 Pa. C.S. § 2701(a)(1)) was filed on August 24, 2023, in the Court of Common Pleas of Bradford County. See Docket, Commonwealth v. Wolf, No. CP-08-CR-0000562-2023 (Bradford Cnty. Ct. Com. Pl. filed Aug. 24, 2023) ("CCP Dkt.").[2] The docket indicates that Wolf pleaded guilty to simple assault and was sentenced to a period of incarceration for a minimum of four months to a maximum of twelve months on May 2, 2024. See id. The sentencing court also ordered that this sentence would run consecutive to sentences Wolf was already serving in criminal cases from Cumberland

---

[2] The Court takes judicial notice of the dockets in Wolf's Pennsylvania criminal cases. See Orabi v. Att'y Gen. of the U.S., 738 F.3d 535, 537 n.1 (3rd Cir. 2014) (stating that the court "may take judicial notice of the contents of another [c]ourt's docket"); Wilson v. McVey, 579 F. Supp. 2d 685, 688 n.5 (M.D. Pa. 2008) (taking judicial notice of court docket).

County and Lycoming County. See id. (stating that Wolf's sentence was to run consecutive to sentences imposed in Commonwealth v. Wolf, No. CP-41-CR-0001743-2017 (Lycoming Cnty. Ct. Com. Pl.) and Commonwealth v. Wolf, No. CP-21-CR-0002708-2018 (Cumberland Cnty. Ct. Com. Pl.)). The Court's review of the dockets for Wolf's two other criminal cases shows that the Court of Common Pleas of Cumberland County sentenced him to a period of state incarceration for a minimum of one year to a maximum of four years on December 15, 2017, after he pleaded guilty to escape (18 Pa. C.S. § 5121(a)). See Docket, Commonwealth v. Wolf, No. CP-21-CR-0002708-2018 (Cumberland Cnty. Ct. Com. Pl. filed Oct. 27, 2017).[3] Then, on March 6, 2019, the Court of Common Pleas of Lycoming County sentenced Wolf to a period of state incarceration for a minimum of one year to a maximum of two years after he pleaded guilty to simple assault. See Docket, Commonwealth v. Wolf, No. CP-41-CR-0001743-2017 (Lycoming Cnty. Ct. Com. Pl. filed Oct. 8, 2018). This sentence was to run consecutive to any other sentence Wolf was serving at the time. See id.

Based on the Court's review of these dockets, it appears that Wolf was already incarcerated in state prison but confined to BCCF as a pretrial detainee awaiting the disposition of his simple assault charges in Bradford County when the events at issue in his complaint occurred in December 2023. In other words, although Wolf was technically a convicted and sentenced state prisoner, he was confined at BCCF in December 2023 while awaiting the

---

[3] Under Pennsylvania's sentencing laws, a criminal defendant sentenced to a "[m]aximum term[] of two years or more but less than five years shall be committed to the Department of Corrections for confinement" unless certain findings are made regarding confinement of the defendant in the county prison. See 42 Pa. C.S. § 9762(b)(2). Considering that Wolf's Bradford County sentence would not have resulted in his confinement in a Pennsylvania state prison, see id. § 9762(b)(3) ("Maximum terms of less than two years shall be committed to a county prison within the jurisdiction of the court."), the Court presumes that Wolf received state sentences for his convictions in Cumberland and Lycoming Counties.

10

disposition of his criminal charges in Bradford County.  If Wolf was serving his state sentence while incarcerated at BCCF, it appears that the Eighth Amendment, and not the Fourteenth Amendment, applies to his Section 1983 claims in this case.  See Munz v. Michael, 28 F.3d 795, 798 (8th Cir. 1994) (concluding that "a state prisoner released from state prison into the custody of defendants pursuant to a writ of habeas corpus ad prosequendum" "was a prisoner protected by the Eighth Amendment" on his excessive force claim (citing Sinito v. Kindt, 954 F.2d 467, 469 (7th Cir. 1992))); Banks v. County of Allegheny, 568 F. Supp. 2d 579, 594 (W.D. Pa. 2008) (concluding that the Eighth Amendment applied to the plaintiff's Section 1983 claims arising out of events occurring in a county jail because the plaintiff had already been convicted and was serving a sentence imposed in another criminal case prior to the events at issue); Swain v. Brown, No. 24-cv-00318, 2025 WL 2355603, at *7 n.11 (N.D. Ala. July 18, 2025) (citing cases and explaining that "even if Swain situated as a pretrial detainee at the time of the incident in question, courts around the country apply the Eighth Amendment to an plaintiff's claims when said person functions as both a convicted felon serving a valid state sentence and a pretrial detainee because subsequent pending criminal charges have not yet been adjudicated"), report and recommendation adopted, 2025 WL 2346565 (N.D. Ala. Aug. 13, 2025); Brown v. Gonzales, No. 09-cv-00459, 2011 WL 826281, at *4 (E.D. Cal. Mar. 2, 2011) (rejecting the plaintiff's claim that he "should have been treated like a pre-trial detainee" while confined at county jail awaiting disposition of criminal charges because, inter alia, "his status as a convicted prisoner cannot be disregarded simply because he was moved to [the county jail] for prosecution of another crime"). Nevertheless, because the Court lacks information about Wolf's incarceration status at the BCCF

11

in December 2023, the Court will analyze his Section 1983 claims for excessive force and unlawful conditions of confinement under the Eighth and Fourteenth Amendments.[4]

### C.      Wolf's Request for Declaratory Relief in His Complaint

Wolf seeks a form of declaratory relief in his complaint which would acknowledge that Defendants violated his constitutional rights. See (Doc. No. 1 at 3). However, Wolf may not seek declarations about any violations of his constitutional rights in December 2023 because declaratory judgment claims are prospective in nature and cannot be used to declare the rights of litigants with respect to past harms. See CMR D.N. Corp. v. City of Philadelphia, 703 F.3d 612, 628 (3d Cir. 2013). Therefore, the Court will dismiss Wolf's request for declaratory relief for failure to state a claim under Section 1915(e)(2)(B)(ii).

### D.      The Merits of Defendants' Motion to Dismiss and the Court's Continued Screening of Wolf's Claims Under Section 1915(e)(2)(B)

Defendants argue for dismissal of Wolf's Eighth Amendment claims against them based on their lack of personal involvement and Wolf's failure to sufficiently plead facts in support of any violation. See (Doc. No. 20 at 4–10). They also contend that they are entitled to qualified immunity, they are immune from punitive damages to the extent that Wolf seeks punitive

---

[4] In their brief in support of their motion to dismiss, Defendants construe Wolf's excessive-force claims as arising under the Eighth Amendment. See (Doc. No. 20 at 5–6). They also reference both the Eighth and Fourteenth Amendments when addressing Wolf's conditions-of-confinement claims, see (id. at 7–8); however, it is unclear whether they argue Wolf failed to state a claim under one or both Amendments. Moreover, they misstate the law applicable to conditions-of-confinement claims under the Eighth and Fourteenth Amendments by indicating that "[d]ue process or Eighth Amendment standards may be violated when a pretrial detainee is subjected to punishment unrelated to a legitimate penological objective." See (id. at 7). As explained below, the Eighth Amendment standard for conditions-of-confinement claims is not so limited. Overall, to the extent that Defendants have not considered Wolf's claims under the Eighth and Fourteenth Amendments, the Court will review them under Section 1915(e)(2)(B).

damages against them in their official capacities, and Wolf failed to exhaust his administrative remedies.  See (id. at 10–13).  The Court will address each argument in turn.

### 1.    Administrative Exhaustion

Defendants assert that due to Wolf's failure to "articulate in his [c]omplaint that he completed the grievance process," the Court should dismiss his Section 1983 claims "until such time as he has completed the administrative process."  See (id. at 13).  Under the Prison Litigation Reform Act ("PLRA"), a prisoner asserting a Section 1983 claim must fully exhaust their administrative remedies in the prison before raising such a claim in their complaint.  See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").  However, the law has been well settled for the past approximately twenty years that Section 1983 prisoner plaintiffs need not affirmatively plead administrative exhaustion in their complaints.  See Jones v. Bock, 549 U.S. 199, 216 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Small v. Camden County, 728 F.3d 265, 269–70 (3d Cir. 2013) ("Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff." (citing Jones, 549 U.S. at 212, 216–17 and Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002))); Gongliewski v. Wildenstein, No. 24-cv-01935, 2026 WL 98756, at *14 (M.D. Pa. Jan. 14, 2026) ("[E]xhaustion is not a pleading

13

requirement, but an affirmative defense.").  Therefore, the Court cannot dismiss Wolf's Section 1983 claims because he did not affirmatively plead administrative exhaustion in his complaint.[5]

### 2.    Punitive Damages

Defendants argue that "any demand for punitive damages" against them in their official capacities must be stricken because a Section 1983 plaintiff cannot receive punitive damages from a municipality or its employees acting in their official capacities.  See (Doc. No. 20 at 12 (citing City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 259–60 (1981))).  Although Defendants are technically correct, see City of Newport, 453 U.S. at 271 ("[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983."), Wolf does not indicate in his complaint that he asserts his Section 1983 claims against Defendants in their official capacities, and the Court does not construe the complaint as containing such claims.  Accordingly, the Court will not dismiss a claim that Wolf does not raise and will deny this part of Defendants' motion to dismiss.

### 3.    Personal Involvement

Defendants contend that Wolf fails to sufficiently allege their personal involvement in any constitutional violation.  See (Doc. No. 20 at 3–5).  They generally assert that the complaint contains only "vague assertions against [them]," and they characterize Wolf's allegations as

---

[5] Defendants accurately note that this Court could sua sponte dismiss a complaint if a Section 1983 plaintiff concedes they failed to exhaust in their complaint. See (Doc. No. 20 at 13 (citing Ray, 285 F.3d at 293 n.5)); see also Ray, 285 F.3d at 293 n.5 (explaining that Booth v. Churner, 206 F.3d 289 (3d Cir. 2000) and Nyhuis v. Reno, 204 F.3d 65, 69 (3d Cir. 2000) both involved plaintiffs who "explicitly conceded their failure to exhaust administrative remedies," and the dismissals of the complaints in both cases "would . . . fall within a district court's inherent power to dismiss sua sponte a complaint which facially violates a bar to suit").  However, a plaintiff's failure to affirmatively plead exhaustion is not the same as conceding a failure to exhaust, and Wolf does not concede in his complaint that he did not exhaust his administrative remedies. Instead, he does not mention exhaustion at all.  See (Doc. Nos. 1 at 1–3; 1-1 at 1–5).

consisting of "Gunther . . . merely escort[ing Wolf] to a prison misconduct hearing . . . when [Wolf] claims he was slammed to the ground because he was attempting to slip his handcuffs" and "Pond escort[ing Wolf] to a cell that involved inhumane prison conditions at the orders of Sergeant Kipp at one point in time." See (id. at 4–5).  The Court finds that Defendants have mischaracterized Wolf's allegations, at least in part, and that he sufficiently alleged their personal involvement for purposes of Section 1983.

A plaintiff asserting a Section 1983 claim must allege the personal involvement of each defendant in the alleged constitutional violation; in other words, the plaintiff must state how each defendant was involved in the events and occurrences giving rise to the claims in the operative complaint.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.); Iqbal, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").  Here, Wolf alleges that Gunther used excessive force against him by slamming him to the ground, stepping on his back, and then stomping on him.  See (Doc. No. 1 at 2).  He also alleges that Gunther and Pond (and not just Pond as Defendants argue) escorted him to an unsanitary cell at Kipp's direction.  These allegations are sufficient to show that Gunther and Pond were personally involved in the alleged constitutional violations.[6]

As for Kipp, Wolf identifies them as a Sergeant at BCCF who ordered Pond and Gunther to place him in the cell at issue in the complaint.  See (id. at 2).  To plausibly plead Section 1983

---

[6] The Court will separately address whether Wolf alleges plausible Section 1983 claims against Defendants.

liability against a supervisory official such as Kipp, Wolf's allegations must satisfy one of two

(2) theories of supervisory liability: first, "[i]ndividual defendants who are policymakers may be

liable under § 1983 if it is shown that such defendants, with deliberate indifference to the

consequences, established and maintained a policy, practice or custom which directly caused

[the] constitutional harm[;]" and second, "a supervisor may be personally liable under § 1983 if

he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the

person in charge, had knowledge of and acquiesced in his subordinates' violations."  See A.M. ex

rel. J.M.K. v. Luzerne County Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted);

Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014) (explaining requirements for

supervisory liability in section 1983 claim and describing "two general ways in which a

supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates"), rev'd

on other grounds sub nom., Taylor v. Barkes, 575 U.S. 822 (2015).

To allege a plausible claim for supervisory liability under the first theory—the policy-

and-practice strand of supervisory liability—a plaintiff must

> (1) identify the specific supervisory practice or procedure that the supervisor failed
> to employ, and show that (2) the existing custom and practice without the identified,
> absent custom or procedure created an unreasonable risk of the ultimate injury, (3)
> the supervisor was aware that this unreasonable risk existed, (4) the supervisor was
> indifferent to the risk; and (5) the underling's violation resulted from the
> supervisor's failure to employ that supervisory practice or procedure. Put another
> way, the inmate must identify the supervisor's specific acts or omissions
> demonstrating the supervisor's deliberate indifference to the inmate's risk of injury
> and must establish a link between the supervisor, the act, and the injury.

See Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 227 (3d Cir. 2015) (quoting Brown v.

Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001)).  For the second theory of supervisory

liability—participating in, directing others to, or knowledge and acquiescence of constitutional

violation—generalized allegations that a supervisory defendant is "in charge of" or "responsible

16

for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. See Saisi v. Murray, 822 F. App'x 47, 48 (3d Cir. 2020) (unpublished) ("Saisi asserted that some defendants were in charge of agencies that allowed this to happen, and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of [their] position as the head of the [agency].'" (quoting Evancho v. Fisher, 423 F.3d 347, 354 (3d Cir. 2005))); Zigler v. Warren, No. 21-cv-19474, 2022 WL 903383, at *2 (D.N.J. Mar. 28, 2022) ("In simpler terms, a supervisor is not liable for the unconstitutional conduct of [their] employees solely because [they are] a supervisor."). Additionally, "[a]lthough a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." See Chavarriaga, 806 F.3d at 222 (citing Baker v. Monroe Twp., 50 F.3d 1186, 1194 (3d Cir. 1995) and Rode, 845 F.2d at 1201 n.6).

In this case, Wolf does not attempt to hold Kipp liable under Section 1983 based on the first theory of supervisory liability, i.e., a policy or practice, because he does not aver any facts about any policy or practice employed by Kipp which resulted in the violation of his constitutional rights. Instead, Wolf pursues the second theory of supervisory liability insofar as Wolf alleges that Kipp directed Pond and Gunther to violate his Eighth Amendment right to lawful conditions of confinement. Therefore, Wolf has also plausibly pleaded Kipp's personal involvement in a possible Eighth Amendment violation. Accordingly, the Court will deny Defendants' motion to dismiss to the extent they seek dismissal of Wolf's Section 1983 claims based on a failure to sufficiently plead their personal involvement.

17

### 4.    Excessive Force

Defendants seek dismissal of Wolf's excessive-force claims against them because (1) Wolf does not allege that Pond and Kipp used any force against him and (2) Gunther used "necessary force in good faith to maintain or restore discipline" insofar as Wolf alleges that he was trying to slip out of his handcuffs.  See (Doc. No. 20 at 6).  The Court agrees with Defendants' argument as to Wolf's claims against Pond and Kipp but disagrees as to Wolf's claim against Gunther.

### a.    Eighth Amendment Excessive-Force Claims

To plead a plausible Eighth Amendment excessive-force claim, Wolf must allege facts showing that force was applied "maliciously and sadistically for the very purpose of causing harm."  See Jacobs v. Cumberland County, 8 F.4th 187, 193 (3d Cir. 2021) (quoting Whitley v. Albers, 475 U.S. 312, 320–21 (1986)).  This requires consideration of whether the force was "applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  See Hudson v. McMillian, 503 U.S. 1, 7 (1992).  Several factors inform this analysis, including:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response.

See Smith v. Mensinger, 293 F.3d 641, 649 (3d Cir. 2002) (quoting Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000)).  In addition, this analysis is driven "by the extent of the force and the circumstances in which it is applied; not by the resulting injuries."  See id. at 648.

In this case, Wolf does not allege that Pond or Kipp used any force against him at all.  Although Wolf alleges that "Gunther and other officers used excessive force and were stomping

18

on [him]," <u>see</u> (Doc. No. 1 at 2 (emphasis added)), he does not identify the "other officers" as Pond or Kipp.  As such, the Court will dismiss Wolf's complaint to the extent that he asserts Eighth Amendment excessive-force claims against Pond and Kipp.

As for Gunther, Defendants attempt to minimize Wolf's allegations against him in his complaint.  Contrary to Defendants' argument in their brief, Wolf does not allege that Gunther slammed him to the ground and stepped on his back because he attempted to slip his cuffs.  Instead, Wolf alleges that Gunther "claim[ed]" that Wolf did so to justify taking him to the ground.  Construing the allegations in the light most favorable to Wolf and drawing all reasonable inferences in his favor, he alleges that Gunther falsely accused him of attempting to escape his handcuffs as an excuse to take him to the ground.  Then, Gunther and other officers proceeded to stomp on Wolf while he was on the ground.

These allegations are sufficient to plead a plausible excessive-force claim against Gunther, and the issue of whether Gunther used this force in good faith to maintain or restore discipline will have to be explored during discovery.  Accordingly, the Court will grant Defendants' motion to dismiss Wolf's Eighth Amendment excessive-force claims against Pond and Kipp but deny the motion as to his Eighth Amendment excessive-force claim against Gunther.

### b.      Fourteenth Amendment Excessive-Force Claims

If Wolf was a pretrial detainee when the alleged events occurred at the BCCF in December 2023, the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishment Clause of the Eighth Amendment, would govern his excessive-force claims against Defendants.  <u>See</u> <u>Wharton v. Danberg</u>, 854 F.3d 234, 247 (3d Cir. 2017) (citing <u>Bell v. Wolfish</u>, 441 U.S. 520, 535 n.16 (1979)).  Pretrial detainees are entitled to at least as much

protection from excessive force as prisoners who have been convicted of a crime. See Bistrian v. Levi, 912 F.3d 79, 91 (3d Cir. 2018) (citing Kost v. Kozakiewicz, 1 F.3d 176, 188 n.10 (3d Cir. 1993)). However, unlike prisoners who have been convicted of a crime, who may not be subjected to cruel and unusual punishment, pretrial detainees "cannot be punished at all under the Due Process Clause." See Hubbard I, 399 F.3d at 166 (citing Bell, 441 U.S. at 535). Thus, prison officials may not subject pretrial detainees to "excessive force that amounts to punishment." See Jacobs, 8 F.4th at 194 (quoting Graham v. Connor, 490 U.S. 386, 395 n.10 (1989)).

Unlike excessive force claims under the Eighth Amendment, which require plaintiffs to establish both an objective element and a subjective element to prove excessive force, excessive force claims under the Fourteenth Amendment are based exclusively on an objective-reasonableness standard. See id. (citing Kingsley v. Hendrickson, 576 U.S. 389, 396–400 (2015)). Therefore, a pretrial detainee seeking to establish that the use of force was excessive "must show only that the force purposely or knowingly used against him was objectively unreasonable." See id. (citing Kingsley, 576 U.S. at 396–97). A plaintiff can establish that the force used was excessive if they show that the force was "not 'rationally related to a legitimate nonpunitive governmental purpose'" or that the force used was "excessive in relation to that purpose." See id. (quoting Bell, 441 U.S. at 561).

There is no mechanical formula for determining when force is objectively unreasonable under the Fourteenth Amendment. See Kingsley, 576 U.S. at 397 (citing County of Sacramento v. Lewis, 523 U.S. 833, 850 (1998)). Instead, the particular facts and circumstances of the case govern the inquiry, including, but not limited to:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to

20

limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

See id. (citing Graham, 490 U.S. at 396).[7] These facts and circumstances should be considered "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." See id. This consideration "adequately protects an officer who acts in good faith," insofar as it recognizes that "[r]unning a prison is an inordinately difficult undertaking, . . . and that safety and order at these institutions requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face." See id. at 399 (internal quotation marks and citations omitted). In addition, "a court must take account of the legitimate interests in managing a jail, acknowledging as part of the objective reasonableness analysis that deference to policies and practices needed to maintain order and institutional security is appropriate." See id. at 399–400.

Applying this standard for Fourteenth Amendment excessive-force claims to Wolf's allegations in his complaint, he fails to state plausible claims for relief against Pond and Kipp for the same reason he fails to state viable Eighth Amendment excessive-force claims against them, i.e., because he does not allege that they used any force against him. As for Gunther, Wolf's allegations are sufficient at this stage to plead a plausible Fourteenth Amendment excessive-force claim against him. Viewing the allegations in the complaint in the light most favorable to Wolf and drawing any reasonable inferences in his favor, he alleges that Gunther slammed him to the ground, stepped on his back, and stomped on him apparently under the mistaken belief or

---

[7] The Supreme Court explained that it did "not consider this list to be exclusive." See id. Instead, the Court "mention[ed] these factors only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force." See id.

21

falsehood that Wolf was trying to escape from his handcuffs.  Such allegations are sufficient for his claim to pass statutory screening under Section 1915(e)(2)(B).

### 5.      Conditions of Confinement

#### a.      Eighth Amendment Conditions-of-Confinement Claims

Defendants argue for dismissal of Wolf's Eighth Amendment conditions-of-confinement claims because his factual allegations are insufficient to show deliberate indifference, and he fails to allege the dates where he was placed in the cell at issue.  See (Doc. No. 20 at 9–10).  The Court agrees with Defendants that Wolf's allegations are insufficient to plead plausible Eighth Amendment conditions-of-confinement claims against them.

The Eighth Amendment governs claims brought by convicted and sentenced inmates challenging their conditions of confinement.  See Hubbard I, 399 F.3d at 166.  In general, "[t]o determine whether prison officials have violated the Eighth Amendment, [courts] apply a two-prong test: (1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberate[ly] indifferen[t] to inmate health or safety.'"  See Porter v. Pa. Dep't of Corr., 974 F.3d 431, 441 (3d Cir. 2020) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  This showing means that plaintiffs such as Wolf must satisfy both an objective and subjective prong akin to Eighth Amendment excessive force claims.  See Ricks v. Shover, 891 F.3d 468, 475 (3d Cir. 2018).

> To satisfy the objective prong of this test,
>
> the deprivation alleged must be, objectively, sufficiently serious, resulting in the denial of the minimal civilized measure of life's necessities.  Although the Eighth Amendment does not mandate comfortable prisons, prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care. In a challenge to those conditions, the inmate must show that [they are] incarcerated under conditions posing a substantial risk of serious harm.  However, [t]he proof

22

necessary to show that there was a substantial risk of harm is less demanding than the proof needed to show that there was a probable risk of harm.

See Mammana v. Fed. Bureau of Prisons, 934 F.3d 368, 372–73 (3d Cir. 2019) (internal quotation marks and footnotes omitted) (quoting Farmer, 511 U.S. at 834).

To satisfy the subjective prong of the Eighth Amendment test, the plaintiff must allege and show that the defendant prison official had a "sufficiently culpable state of mind." See Chavarriaga, 806 F.3d at 227. "In prison-condition cases that state of mind is one of 'deliberate indifference' to inmate health or safety . . . ." Farmer, 511 U.S at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 302–03 (1991)). This requires a plaintiff to show that the defendant prison official "kn[e]w of and disregard[ed] an excessive risk to inmate health or safety . . . meaning that the official must actually [have been] aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." See Woloszyn v. County of Lawrence, 396 F.3d 314, 321 (3d Cir. 2005) (omission in original) (quoting Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001)). The plaintiff "may demonstrate deliberate indifference by showing that the risk of harm was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past such that defendants must have known about the risk." See Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 259 (3d Cir. 2010) (citation and internal quotation marks omitted). In evaluating the subjective prong of the Eighth Amendment test, courts also should consider whether officials "had a legitimate penological purpose" behind their conduct. See Ricks, 891 F.3d at 475. Overall, the Court must conduct "a totality-of-the-circumstances analysis" and should consider the duration and severity of the allegedly unconstitutional conditions. See McClure v. Haste, 820 F. App'x 125, 128 (3d Cir. 2020) (unpublished).

Here, Wolf's conditions-of-confinement claims are based on him remaining in an unsanitary cell, without footwear and "hygiene material," and with constant lighting, for a period

23

of seven (7) days.  <u>See</u> (Doc. No. 1 ¶¶ 16, 20).  The Court recognizes that "[s]ome conditions of

confinement may establish an Eighth Amendment violation 'in combination' when each would

not do so alone, but only when they have a mutually enforcing effect that produces the

deprivation of a single, identifiable human need such as food, warmth, or exercise . . . ."  <u>See</u>

<u>Wilson</u>, 501 U.S. at 304 (emphasis omitted).  Nevertheless, the conditions of confinement

described here, either alone or in combination, do not support a plausible Eighth Amendment

conditions-of-confinement claim.

Regarding constant lighting, "bright, constant illumination that causes 'grave sleeping

problems and other mental and psychological problems,' can establish an Eighth Amendment

deprivation."  <u>See</u> <u>Mammana</u>, 934 F.3d at 374 (quoting <u>Keenan v. Hall</u>, 83 F.3d 1083, 1090–91

(9th Cir. 1996)); <u>see also</u> <u>Murray v. Keen</u>, 763 F. App'x 253, 255 (3d Cir. 2019) (unpublished)

("[I]t is likely that constant illumination may, at least under certain or extreme circumstances,

amount to a constitutional violation."); <u>Molina v. Harry</u>, No. 18-cv-01391, 2019 WL 3958422, at

*3 (M.D. Pa. Aug. 22, 2019) (concluding that plaintiff pleaded sufficient facts in support of their

Eighth Amendment conditions-of-confinement claim by alleging that he experienced "'large

bright lights directly in front of his bed . . . [that] shone into his cell (24) hours per day, making it

impossible for him to receive uninterrupted sleep' which resulted in sleep deprivation and

depression," in conjunction with his complaints of a "'mutually enforcing' condition," <u>i.e.</u>, noise,

which "boost[ed]—if only marginally—[plaintiff's] claim that the conditions of confinement"

prevented sleep).  "Constant illumination is not a <u>per se</u> violation of the Eighth Amendment,

however, and it is permissible when it is reasonably related to . . . legitimate penological

interests, such as inmate and officer security or the need to monitor segregated prisoners."  <u>Fields</u>

<u>v. Schmittinger</u>, No. 21-cv-00225, 2022 WL 767038, at *5 (W.D. Va. Mar. 14, 2022) (citations

omitted).  In this case, Wolf's allegations do not meet the level of severity needed for an Eighth Amendment violation.  In particular, he does not allege that the lighting was bright, that it caused him significant sleeping problems, or that he suffered other mental and psychological problems due to the lighting.

As for the allegedly unsanitary nature of Wolf's cell, the Court notes that prison conditions may be harsh and uncomfortable without rising to the level of a constitutional violation.  See Farmer, 511 U.S. at 833–34.  Wolf's allegation about his cell being unsanitary fails to state a plausible Eighth Amendment claim because he does not allege that his unsanitary cell posed a substantial risk of harm to his health or safety, or that Defendants knew of these conditions and disregarded an excessive risk to his health and safety.  See Wheeler v. Walker, 303 F. App'x 365, 368 (7th Cir. 2008) (unpublished) (rejecting Eighth Amendment claim where prisoner failed to allege serious harm from two-week period where he had only thin blanket to protect him from frigid area entering unheated cell through window with broken latches, roaches crawled over him while he tried to sleep on badly torn mattress, urine and waste "encrusted" sink and toilet, trash, dirt, and debris covered floors, walls, and sink, and stench of waste came from broken toilet); see also Robles v. Casey, No. 10-cv-02663, 2011 WL 398208, at *8–9 (M.D. Pa. Jan. 7, 2011) (recommending dismissal of pro se plaintiff's Eighth Amendment conditions-of-confinement claim based on, inter alia, unsafe and unsanitary conditions in prison's kitchen because plaintiff's allegations failed to state that the "unsanitary conditions in the kitchen posed a substantial risk of serious harm to his health or safety"), report and recommendation adopted, 2011 WL 398203 (M.D. Pa. Feb. 3, 2011).

Finally, as to Wolf's allegations that he lacked footwear or hygiene products during the seven-day period he was confined to the allegedly unsanitary cell, the Court notes that

"deficiencies and inadequacies in prison conditions do not necessarily violate the Eighth Amendment." See Tillery v. Owens, 907 F.2d 418, 426 (3d Cir. 1990). "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  While harsh, the deprivation of clothing, such as footwear, for seven days, does not rise to the level of severity required to state a plausible Eighth Amendment claim.  See Adderly v. Ferrier, 419 F. App'x 135, 140 (3d Cir. 2011) (unpublished) (holding that denial of access to, inter alia, clothing, toiletries, and a pillow for two separate seven-day periods did not constitute a denial of the minimal civilized measures of life's necessities (citing Williams v. Delo, 49 F.3d 442, 444–47 (8th Cir. 1995)).  Moreover, "[b]ecause the Eighth Amendment protects only against the denial of 'the minimal civilized measure of life's necessities,' the alleged denial of unspecified 'hygiene products,' without further explanation, and for only seven days, does not itself support a claim." See Mitchell v. Stavola, No. 25-cv-00042, 2025 WL 1115752, at *2 (M.D. Pa. Apr. 15, 2025) (citing Jones v. Wetzel, 737 F. App'x 61, 64 (3d Cir. 2018) (unpublished)); Lee v. Janosko, No. 18-cv-01297, 2021 WL 877761, at *9 (W.D. Pa. Mar. 9, 2021) ("The denial of a shower or hygiene items for a limited period of time also does not violate the Eighth Amendment." (citing Gay v. Shannon, 211 F. App'x 113, 116 (3d Cir. 2006) (unpublished) and Ebersole v. Pennsylvania, No. 01-cv-01924, 2007 WL 2815730, at *10 (M.D. Pa. Sept. 25, 2007))); Mayo v. Corr. Officer Finley, No. 16-cv-01514, 2017 WL 2937965, at *3 (W.D. Pa. Mar. 24, 2017) ("To the extent Plaintiff contends that it was [his toothpaste, toothbrush, soap, and washcloth] that he was forced to go without for fourteen days, . . . his allegations still do not state a claim because deprivation of personal hygiene items for a limited number of days does not violate the Eighth Amendment."), report and recommendation adopted, 2017 WL 2936778 (W.D. Pa. July 10,

26

2017).  Accordingly, the Court will grant Defendants' motion to dismiss Wolf's Eighth

Amendment conditions-of-confinement claims against them.[8]

### b.   Fourteenth Amendment Conditions-of-Confinement Claims

The Due Process Clause of the Fourteenth Amendment governs claims brought by

pretrial detainees challenging their conditions of confinement.  See Hubbard I, 399 F.3d at 166.

To establish a constitutional violation under the Fourteenth Amendment, a pretrial detainee

plaintiff would have to plausibly allege that the challenged conditions of confinement amount to

punishment.  See Bell, 441 U.S. at 538 ("In evaluating the constitutionality of conditions or

restrictions of pretrial detention that implicate only the protection against deprivation of liberty

without due process of law, we think that the proper inquiry is whether those conditions amount

to punishment of the detainee."); see also Bistrian v. Levi, 696 F.3d 352, 373 (3d Cir. 2012)

("Given pretrial detainees' federally protected liberty interests ... under the Due Process Clause ...

a detainee may not be punished prior to an adjudication of guilt in accordance with due process

of law." (citation and internal quotation marks omitted)), abrogated on other grounds by Bistrian,

912 F.3d at 96.  When analyzing whether a condition of confinement amounts to punishment, the

inquiry generally turns on whether the challenged conditions have a purpose other than

punishment and whether the conditions are excessive in relation to that purpose.  See Bell, 441

U.S. at 538–39 ("A court must decide whether the [particular restriction or condition

---

[8]  As indicated above, in addition to arguing that Wolf's allegations were insufficient to plead a plausible claim for relief, Defendants contend that Wolf failed to specify when he was placed in the unsanitary cell.  See (Doc. No. 20 at 9).  The Court disagrees.  Wolf alleges that following Gunther's use of force in December 2023, he was placed in the unsanitary cell for seven days. See (Doc. No. 1 at 2).  This is sufficiently specific at this stage insofar as Wolf identifies the month and year when this allegedly occurred.  Wolf also provides enough information to show that there does not appear to be a statute-of-limitations issue.  Therefore, the Court will not dismiss Wolf's conditions-of-confinement claims based on an alleged failure to specify the date and time that the incidents at issue occurred.

accompanying pretrial detention] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose."); Hope v. Warden York County Prison, 972 F.3d 310, 326 (3d Cir. 2020) (explaining that, when evaluating claims of punitive conditions of confinement, "[t]he touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish or are 'but an incident of some other legitimate governmental purpose.'" (quoting Hubbard v. Taylor, 538 F.3d 229, 232 (3d Cir. 2008) ("Hubbard II"))); Hubbard I, 399 F.3d at 158 (discussing analysis of whether condition of confinement constitutes punishment for Fourteenth Amendment purposes).[9]  In addition, the Court should consider the totality of the circumstances in assessing whether a prisoner's conditions of confinement violate the Fourteenth Amendment.  See Hubbard II, 538 F.3d at 236, 238 (examining totality of circumstances to determine whether conditions of confinement constitute Fourteenth Amendment violation); Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996) (explaining that "to determine whether conditions of confinement violate the Eighth Amendment, it is necessary to examine the totality of the conditions at the institution"); Union County Jail Inmates v. Di Buono, 713 F.2d 984, 1000–01 (3d Cir. 1983) (discussing that "the overall length

---

[9]  The Bell Court also explained:

> Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]. Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment.  Conversely, if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

See 441 U.S. at 538–39 (internal quotation marks, citations, and footnote omitted).

28

of confinement is only one factor among several that must be considered by a district court in evaluating the totality of circumstances relevant to any alleged constitutional deficiency in shelter").

"Unconstitutional punishment typically includes both objective and subjective components." Stevenson v. Carroll, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component whether the officials acted with a sufficiently culpable state of mind." Id. (internal quotation marks and alterations omitted). In general, when alleging a sufficiently culpable state of mind, a detainee must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. See Wilson, 501 U.S. at 298–99; see also Farmer, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference."); cf. Edwards v. Northampton County, 663 F. App'x 132, 135 (3d Cir. 2016) (unpublished) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners, and pretrial detainees[.]" (internal citations omitted)). Furthermore,

> [i]n determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that "[s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters."

See Bell, 441 U.S. at 541 n.23 (quoting Pell v. Procunier, 417 U.S. 817, 827 (1974)).

In this case, Wolf fails to allege sufficient facts to state plausible Fourteenth Amendment conditions-of-confinement claims against Defendants. Although Wolf alleges that Gunther and

29

Pond transported him to the unsanitary cell on Kipp's orders, he does not sufficiently describe the allegedly unsanitary conditions of the cell. He also fails to plausibly allege that Defendants were deliberately indifferent because he does not allege that they were responsible for taking his footwear and keeping it from him for seven days, that they denied him hygiene products for seven days, that they were potentially responsible for the constant lighting in his cell, that they knew about the unsanitary conditions in his cell before placing him in it, or that he informed Defendants about the conditions in his cell only to have them subsequently act with deliberate indifference. Accordingly, the Court will dismiss Wolf's Fourteenth Amendment conditions-of-confinement claims for failure to state a claim under Section 1915(e)(2)(B)(ii).

### 6.    Qualified Immunity

Defendants contend that they are entitled to qualified immunity from Wolf's Section 1983 claims. See (Doc. No. 20 at 11–12). "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine whether a right was clearly established, the Court must ask "whether it would be clear to a reasonable officer that [their] conduct was unlawful in the situation [they] confronted." See Schmidt v. Creedon, 639 F.3d 587, 598 (3d Cir. 2011) (internal quotation marks omitted) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)). "If it would not have been clear to a reasonable officer what the law required under the facts alleged, then [they are] entitled to qualified immunity." Id. In other words, for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." See al-Kidd, 563 U.S. at 741. "This demanding standard protects 'all but the plainly

30

incompetent or those who knowingly violate the law.'" District of Columbia v. Wesby, 583 U.S. 48, 63 (2018) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).  Accordingly, "there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited."  See Mammaro v. N.J. Div. of Child Prot. & Permanency, 814 F.3d 164, 169 (3d Cir. 2016) (quoting McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001)).  In making this determination, the Court looks to applicable Supreme Court precedent, but if none exists, "a 'robust consensus of cases of persuasive authority' in the Court[s] of Appeals could clearly establish a right for purposes of qualified immunity."  See id. (quoting Taylor, 575 U.S. at 826).

The inquiry into whether a right is clearly established "do[es] not require a case directly on point," instead, "existing precedent must have placed the statutory or constitutional question beyond debate."  See White v. Pauly, 580 U.S. 73, 79 (2017) (internal quotation marks omitted) (quoting Mullenix v. Luna, 577 U.S. 7, 12 (2015)).  The clearly established law "must be 'particularized' to the facts of the case," and the presentation of a unique set of facts by a case is an "important indication" that a defendant's conduct at issue did not violate a "clearly established" right.  See id. at 79–80 (internal quotation marks omitted) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  However, a constitutional deprivation that occurs under unique factual circumstances does not necessarily warrant an automatic grant of qualified immunity.  See Hope v. Pelzer, 536 U.S. 730, 741 (2002) (holding that "officials can still be on notice that their conduct violates established law even in novel factual circumstances").  There may be the rare "obvious case," where "a body of relevant case law" is not necessary, see Brosseau v. Haugen, 543 U.S. 194, 199 (2004), especially when the case in question presents "extreme circumstances" to which "a general constitutional rule already identified in the

31

decisional law may apply with obvious clarity." See Taylor v. Riojas, 592 U.S. 7, 8–9 (2020) (internal quotation marks omitted) (quoting Hope, 536 U.S. at 741).

In this case, other than reciting what they believe to be the applicable law on qualified immunity, Defendants' entire qualified-immunity argument concerning Wolf's Section 1983 claims is the following:

> In this case, [Wolf] has failed to sufficiently aver that Defendants violated his constitutional rights, nor has he established anything close to a causal connection between any of the correctional facility official's actions and a specific deprivation of his constitutional rights. Defendants are government officials that perform discretionary functions of safety at the B[CCF]. Wolf fails to state a claim of a violation of clearly established law. Defendants enjoy qualified immunity and should be dismissed from this action.

See (Doc. No. 20 at 11–12). This conclusory argument is insufficient to warrant this Court dismissing Wolf's Section 1983 claims due to qualified immunity. See, e.g., McCottrell v. White, 933 F.3d 651, 670 n.12 (7th Cir. 2019) ("In the final sentence of their brief on appeal, the defendants also assert that they were 'at least entitled to qualified immunity.' Perfunctory and undeveloped arguments are waived, and we need not consider this single-sentence argument further." (internal citation omitted)); St. Clair v. Harris, No. 21-cv-01837, 2023 WL 4086286, at *16 n.16 (W.D. Pa. June 20, 2023) ("The Court is especially hesitant to conduct a qualified immunity analysis given Defendant Harris' undeveloped argument on its application.").

Defendants "bear the burden of persuasion under each prong" of the qualified immunity analysis, see Anglemeyer v. Ammons, 92 F.4th 184, 188 (3d Cir. 2024) (citing Mack v. Yost, 63 F.4th 211, 227 (3d Cir. 2023)), yet do not cite any precedent showing whether the rights Wolf's claims they violated were clearly established at the time of the alleged violations. In addition, although Defendants contend that Wolf fails to state a plausible Section 1983 claim against any of them, they do not mention in a non-conclusory fashion whether he has sufficiently alleged the

32

denial of a statutory or constitutional right as part of their qualified immunity argument.

Moreover, Defendants do not attempt to separately analyze Wolf's allegations against each of

them.  See Grant v. City of Pittsburgh, 98 F.3d 116, 123 (3d Cir. 1996) (explaining that district

courts "should analyze separately the conduct of each [defendant] against the constitutional right

allegedly violated" when assessing multiple defendants' assertion of a qualified immunity

defense).  As such, Defendants have essentially "pass[ed] off the necessary research and

analytical work," see Yentzer v. Potter County, No. 20-cv-01579, 2022 WL 903937, at *5 (M.D.

Pa. Mar. 28, 2022), to the Court relating to their qualified immunity defense, and the Court will

not do their work for them.  Accordingly, to the extent Defendants assert that they are entitled to

qualified immunity from Wolf's Section 1983 claims, the Court will deny their motion to

dismiss.[10]

### D.    Leave to Amend

Having determined that Wolf's excessive-force claims against Pond and Kipp, as well as

his conditions-of-confinement claims against all Defendants, are subject to dismissal, the Court

must determine whether to grant him leave to file an amended complaint.  Courts should

generally give leave to amend but may dismiss an amended complaint with prejudice where

leave to amend would be inequitable or futile.  See Fletcher-Harlee Corp. v. Pote Concrete

---

[10]  The Court recognizes that district courts are encouraged to resolve questions of qualified immunity "at the earliest possible stage in litigation."  See Hunter v. Bryant, 502 U.S. 224, 227 (1991).  However, "in the vast majority of cases," it is impossible to resolve the issue without developing a factual record.  See Newland v. Reehorst, 328 F. App'x 788, 791 n.3 (3d Cir. 2009) (unpublished) ("[I]t is generally unwise to venture into a qualified immunity analysis at the pleading stage."); Thomas v. Indep. Twp., 463 F.3d 285, 291 (3d Cir. 2006) (determining that qualified immunity should be applied at the pleading stage "only when the immunity is established on the face of the complaint" (quoting Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001))).

33

Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); see also Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [they have] leave to amend within a set period of time, unless amendment would be inequitable or futile."). "In determining whether [amendment] would be futile, the district court applies the same standard of legal sufficiency as [it] applies under Fed. R. Civ. P. 12(b)(6)." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

Here, even though Wolf does not allege that Pond and Kipp used force against him, the Court will grant him leave to amend his excessive-force claims if they were among the "other officers," see (Doc. No. 1 at 2), who stomped on Wolf while he was on the ground. As for his conditions-of-confinement claims, the Court will permit Wolf leave to file an amended complaint as to these claims. In filing an amended complaint, Wolf must specify whether he was a pretrial detainee or a convicted and sentenced state prisoner serving part of his state sentence while he was incarcerated at the BCCF in December 2023. In addition, he should be mindful of the Court's reasons for dismissing his conditions-of-confinement claims should he choose to file an amended complaint. If Wolf does not timely file an amended complaint in accordance with the Order accompanying this Memorandum, this case will proceed on only his excessive-force claim under either the Eighth or Fourteenth Amendment against Gunther.

## IV.    CONCLUSION

For the reasons stated above, the Court will: (1) grant Defendants' motion to dismiss to the extent that they seek dismissal of Wolf's Eighth Amendment excessive-force claims against

34

Pond and Kipp as well as his Eighth Amendment conditions-of-confinement claims against all Defendants; (2) deny Defendants' motion to dismiss to the extent that they seek dismissal of Wolf's Eighth Amendment excessive-force claim against Gunther; (3) dismiss Wolf's request for declaratory relief, his possible Fourteenth Amendment excessive-force claims against Pond and Kipp, and his possible Fourteenth Amendment conditions-of-confinement claims against Defendants for failure to state a claim under Section 1915(e)(2)(B)(ii); and (4) grant Wolf leave to file an amended complaint.  An appropriate Order follows.[11]

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

---

[11]  The Order will provide additional information to Wolf about the filing of an amended complaint.